403 So.2d 1139 (1981)
John RUMBOUGH and Polly Rumbough, His Wife, Appellants,
v.
CITY OF TAMPA, a Municipal Corporation, Appellee.
No. 80-2209.
District Court of Appeal of Florida, Second District.
September 23, 1981.
*1140 George W. Phillips, Tampa, for appellants.
Joseph G. Spicola, Jr., City Atty., and James A. Sheehan, Asst. City Atty., Tampa, for appellee.
GRIMES, Judge.
This appeal requires us to determine the applicability of the statute waiving sovereign immunity to cases involving nuisance.
Appellant sued the City of Tampa for damages caused by the operation of a sanitary landfill or garbage dump near their home. They alleged that after they bought their home, the city expanded the South Manhattan Landfill in the direction of their property and that, as a consequence, the foul odors permeating therefrom had substantially impaired the use and enjoyment of their property. One of the city's defenses to the suit was sovereign immunity. The city filed a motion for summary judgment together with the affidavit of its claims manager which stated that the city had paid $100,000 in settlement of claims and lawsuits asserting damages caused by the landfill. The court entered summary judgment for the city finding that the city's decision to expand South Manhattan Landfill was a discretionary function thereby rendering it immune from suit under the rationale of Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), and that in any event the city had reached its statutory limitation on the payment of damages. The court specifically noted that the allegations of nuisance at the landfill constituted a single act or occurrence under section 768.28(5), Florida Statutes (1979).
Traditionally, sovereign immunity protected the State of Florida and its agencies from suits grounded upon nuisance. See Schmauss v. Snoll, 245 So.2d 112 (Fla.3d DCA 1971). On occasion, the courts tempered the harshness of this rule by requiring the state to commence condemnation proceedings because its activities had effectively destroyed an owner's beneficial use of his land. E.g., State Road Department v. Tharp, 146 Fla. 745, 1 So.2d 868 (1941). Cities, on the other hand, have always been liable for damages caused by their nuisances without regard to sovereign immunity. City of Lakeland v. Douglass, 143 Fla. 771, 197 So. 467 (1940). Therefore, our first task is to decide whether the legislation providing for a limited waiver of sovereign immunity has altered these principles.
Section 768.28(1), Florida Statutes (1979), reads as follows:
(1) In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances *1141 in which the state or such agency or subdivision, if a private person, would be liable to the claimant in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
Obviously, those who drafted this statute were thinking primarily of the ordinary negligence action for personal injuries and property damage. Yet, the language appears broader in scope.[1] Unquestionably a private nuisance is a tort. But is it caused by a negligent or wrongful act or omission? Generally, private nuisances are said to arise as the result of conduct which is (1) intentional, (2) negligent, or (3) abnormally dangerous. 4 Restatement (Second) of Torts § 822 (1979). Thus, a negligently caused nuisance would clearly fall within the wording of the statute. Of course, many nuisances are intentional but some do not involve activity thought to be reprehensible. The efficient operation of a sanitary landfill, for example, meets a pressing community need and serves a laudable public purpose. Yet, because of its inherent nature, it may under some circumstances constitute a nuisance. Therefore, can it be said to be "wrongful" so as to fall within the statutory language? We think the answer must lie in the conclusion that once an activity is legally determined to be a nuisance, it is "wrongful" for purposes of the statute, regardless of the morality involved. The same analysis would seem applicable to any abnormally dangerous activity which is characterized as a nuisance, but we need not make that decision in this case because appellants did not contend that the South Manhattan Landfill is abnormally dangerous.[2] We also note that our sister court in Department of Transportation v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980), assumed, without debate, that section 768.28 waived the immunity of the Department of Transportation when it created a nuisance.
Having decided that section 768.28 includes nuisances, the next question is whether the statute has any applicability to cities. The supreme court recently provided the answer to that question in Cauley v. City of Jacksonville, (Fla. 1981), by holding that the statute is equally applicable to cities despite the fact that they previously had no sovereign immunity. The court reasoned that there was no constitutional prohibition against legislatively granting limited immunity to cities and that the legislature intended for cities to be on the same footing as the state and its agencies.
Although we have determined that section 768.28 waives sovereign immunity in nuisance actions and is applicable to municipalities, this does not end our inquiry because even when there has been a waiver of sovereign immunity, the exercise of some governmental functions still does not provide a basis for governmental liability. Commercial Carrier Corp. v. Indian River County. This principle is bottomed on the concept of separation of powers and holds that certain discretionary or planning functions of coordinate branches of government should not be subject to scrutiny by judge or jury as to the wisdom of the actions taken. Id. at 1017-22. Thus we must consider whether the activity characterized as a nuisance in this case was the result of a discretionary or planning decision rather than a decision on the operational level. As a tool to assist in questions of this type, the court in Commercial Carrier Corp. commended the utilization of the test outlined in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965):
"Whatever the suitable characterization or label might be, it would appear *1142 that any determination of a line of demarcation between truly discretionary and other executive and administrative processes, so far as susceptibility to potential sovereign tort liability be concerned, would necessitate a posing of at least the following four preliminary questions: (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved."
371 So.2d at 1019. When these four questions are addressed to Tampa's decision to expand the South Manhattan Landfill, it is evident that they require affirmative answers.
Appellants do not assert that the landfill was constructed or is being operated negligently or in any manner which falls short of the appropriate standards for a landfill.[3] While it is the operation of the landfill which inflicts the damages, such operation is nothing more than an implementation of the decision which was made at the planning level. Appellants' grievances rest solely on the premise that the city is operating a landfill near their home. In this respect, the die was cast when the city decided to expand the landfill in a direction toward the appellants' property. In so doing, the city was exercising a discretionary function which could not create liability.
There is a second reason why the appellants cannot recover in this case. As the court found, the city had already paid the sum of $100,000 to other residents of the area on their claims resulting from the conduct of the landfill. By its terms, section 768.28(5) limits the payment of all claims or judgments "arising out of the same incident or occurrence" to $100,000. Appellants concede that the effects of the landfill upon each surrounding landowner must be aggregated for purposes of the $100,000 maximum. However, they argue that the maintenance of a sanitary landfill over a period of years in and of itself is not an "incident or occurrence" within the meaning of the statute.
In ordinary parlance, the word incident refers to an event or happening of moment rather than something occurring over a period of time. Thus we must focus on the broader term "occurrence." There has been frequent litigation over the word "occurrence" in the insurance field. Insurance coverage for occurrences is generally interpreted to include liability for damages which are inflicted over a period of time. E.g. Grand River Lime Co. v. Ohio Casualty Insurance Co., 32 Ohio App.2d 178, 289 N.E.2d 360 (1972). 1 R. Long, The Law of Insurance Liability § 1.25 (1980). Admittedly, most liability insurance policies broadly define the word occurrence. Yet, by using the word occurrence in the statute, the legislature may have intended that it receive a similar interpretation since the *1143 limited waiver of sovereign immunity contemplates that governmental agencies might carry liability insurance up to the statutory maximum of liability. The fact that because of the policy language the insurance cases also limit the word occurrence to cover only unintended results does not mean that an intentional nuisance could not be an occurrence, since the statute specifically waives sovereign immunity for wrongful acts. In any event, having concluded the statute waives sovereign immunity with respect to torts which constitute a nuisance, we cannot see how such torts could be divided into time segments so as to permit multiple recoveries simply because nuisances are usually continuing in nature.
AFFIRMED.
HOBSON, A.C.J., and DANAHY, J., concur.
NOTES
[1] Several courts have already accepted the proposition that the statute pertains to torts other than those sounding in negligence. Weston v. State, 373 So.2d 701 (Fla. 1st DCA 1979); Cobb's Auto Sales, Inc. v. Coleman, 353 So.2d 922 (Fla. 4th DCA 1978); State ex rel. Division of Admin. v. Oliff, 350 So.2d 484 (Fla. 1st DCA 1977); Florida Dep't. of Revenue v. Norville, 321 So.2d 95 (Fla. 4th DCA 1975).
[2] But see Laird v. Nelms, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972), which construed language in the Federal Tort Claims Act similar to that in section 768.28 to exclude damages caused by the nonnegligent ultrahazardous conduct of the federal government from its waiver of sovereign immunity.
[3] We conceive that even in the absence of negligence the city could be liable in nuisance under the statute because of an operational decision intentionally made involving the construction or maintenance of the landfill in a substandard manner, but appellants have not alleged any such facts here.