**Ronald COMER and Kenneth Palmer, Plaintiffs,**

v.

**CITY OF PALM BAY, Defendant.**

**No. 6:98–CV–868–ORL–JGG.**

United States District Court, M.D. Florida. Orlando Division.

June 21, 2001.

Mark E. Tietig, Lisa Kuhlman Tietig, Tietig & Tietig, Merritt Island, FL, for plaintiffs.

Rosa Houston Carson, Lucille E. Turner, Leonard A. Carson, Carson & Adkins, Tallahassee, FL, for defendant.

## ORDER

GLAZEBROOK, United States Magistrate Judge.

This cause came on for consideration at a hearing on March 5, 2001 on the following motion:

MOTION: PLAINTIFF COMER'S MOTION FOR WRIT OF *MANDA-MUS* [Docket No. 140]

FILED: October 19, 2000

DISPOSITION: DENIED.

## I. *PROCEDURAL BACKGROUND*

The Court has previously set forth the procedural history of this matter at great length and need not do so again. *See* Docket Nos. 101, 137. The pertinent background for the present motion is as follows. On July 28, 1998, plaintiffs Ronald Comer and Kenneth Palmer filed a single complaint alleging racial discrimination (in the case of Comer, who is African–American) and ethnic discrimination (in the case of Palmer, who is of Puerto Rican heritage) by the City of Palm Bay. Docket No. 1. Plaintiff Comer, but not Palmer, withstood the defendant City of Palm Bay's motion for summary judgment [*see* Docket No. 101 (order on summary judgment)] and proceeded to a five-day jury trial from May 22, 2000 through May 26, 2000 before the undersigned United States Magistrate Judge on consent. Docket Nos. 102—7. At the close of trial, the Court charged the jury according to instructions agreed upon by the parties. Docket No. 112.

On May 26, 2000, the jury returned a verdict on a form agreed upon by the parties. Docket No. 111. On all of the federal claims in the agreed verdict form, the jury favored defendant Palm Bay.[1] On the single state claim—negligent supervision—the jury favored plaintiff Comer in the amount of $200,000. Docket No. 111 at 8. On May 30, 2000, the Clerk entered judgment in favor of Comer and against Palm Bay in the amount of $200,000, with statutory post-judgment interest and costs to Comer. Docket No. 113. The Clerk closed the case on May 30, 2000, and taxed costs in the amount of $3,166.47. Docket No. 125.

On June 13, 2000, defendant Palm Bay filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or alternatively, for either a remittitur of damages or a new trial on the issue of damages. Docket No. 116. Palm Bay asserted that remittitur was appropriate because of the lack of any rational relationship between the plaintiff's evidence at trial and the damages award. Docket No. 116 at 9. Palm Bay did not assert in this motion, as it does now, that the amount awarded exceeds the limits set forth in Fla. Stat. § 768.28(5). By order dated August 2, 2000, the Court denied this motion, as well as a motion by Palm Bay for award of attorney fees and a competing attorney fees motion by plaintiff Comer. Docket No. 137. On October 19, 2000, Comer filed the present motion for a writ of *mandamus* to compel Palm Bay to

---

1. As to Comer's retaliation claim, the jury found that Comer's statutorily-protected activity caused an adverse employment action by the City of Palm Bay, but determined that Comer suffered no damages as a result. Docket No. 111 at 5. The jury also made a superfluous finding (in the retaliation portion of the verdict form) that Comer should be awarded damages of $50,000 to compensate for his emotional pain and mental anguish. Docket No. 111 at 6. Comer failed to prove each element of his retribution claim, and the jury's superfluous finding duplicates the jury's identical award in connection with Comer's successful claim for negligent supervision. Docket No. 111 at 8.

pay $96,833.53 that he alleges Palm Bay still owes to him on the May 30, 2000 judgment. Docket No. 140. In its opposition to this motion, Palm Bay asserts—for the first time—that it is immune for any obligation to make such payment by virtue of Fla. Stat. § 768.28(5). On March 5, 2001, the Court held a hearing on this matter. Docket No. 157.

## II. *APPLICABLE LAW*

### A. *Federal Application of State Law*

 Federal Rule of Civil Procedure 69(a) provides as follows:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution *shall be in accordance with the practice and procedure of the state in which the district court is held,* existing at the time the remedy is sought, *except that any statute of the United States governs to the extent that it is applicable.* In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

Fed. R. Civ. Proc. 69(a) (emphasis supplied). Rule 69(a) permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits. *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). A creditor may seek immediate registration and enforcement of a federal court judgment pursuant to state enforcement procedures even if the analogous federal law does not provide for such relief, so long as the state methods do not conflict with the federal law. *Keeton v. Hustler Magazine, Inc.,* 815 F.2d 857 (2d Cir.1987) (judgment creditor permissibly sought immediate enforcement of a federal judgment in New York state court under New York law, even though inter-district registration under 28 U.S.C. § 1963 was unavailable due to pendency of judgment debtor's appeal). Conversely, a judgment creditor generally may not avail itself of methods not available under state law. *See Leroy v. City of Houston,* 906 F.2d 1068 (5th Cir.1990) (attempt by attorney fee judgment creditor in a purely federal Voting Rights Act case to levy against municipal property impermissible under state law).

The presence of a federal interest in the enforcement of a judgment may sometimes trump anti-enforcement provisions under state law. *Specialty Healthcare Management, Inc. v. St. Mary Parish Hosp.,* 220 F.3d 650, 653 (5th Cir.2000). For instance, the former Fifth Circuit[2] upheld a district court order requiring the Treasurer of Mississippi to pay an attorney fee judgment rendered pursuant to 42 U.S.C. § 1988 despite a provision in Mississippi law forbidding the satisfaction of any judgment against the state except by an appropriation of the legislature. *Gates v. Collier,* 616 F.2d 1268 (5th Cir.1980). The *Gates* court found that Congress clearly intended that § 1988 attorney fees should be enforceable against recalcitrant state defendants despite Congress' failure to enact a specific execution procedure:

> In all likelihood, Congress assumed it was unnecessary to consider the subject because the Federal Rules of Civil Pro-

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

cedure contains a provision for the execution of district court judgments, Fed. R.Civ.P. 69, and a provision authorizing the court to appoint an individual to do any act on behalf of a party who has refused to comply with the judgment himself, Fed.R.Civ.P. 70. We have been cited to no authority, nor have we found any, to indicate that these statutes do not apply to a state and its officials. Cf. Gary W. v. State of Louisiana, 601 F.2d 240, 246 (5th Cir.1979). In addition, "(a) federal court's interest in orderly, expeditious proceedings," Hutto v. Finney, 437 U.S. at 696, 98 S.Ct. at 2577, 57 L.Ed.2d 522, justifies any reasonable action taken by the court to secure compliance with its orders.

Gates, 616 F.2d at 1271. The Gates court concluded that "where a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance." Gates, 616 F.2d at 1271.

### B. Prohibition Under Florida Law Against Splitting Cause of Action

The Florida Supreme Court has long "recognize[d] the rule against the splitting of causes of action and that as a general rule the law mandatorily requires that all damages sustained or accruing to one as a result of a *single wrongful act* must be claimed and recovered in one action or not at all." Gaynon v. Statum, 151 Fla. 793, 10 So.2d 432, 433 (1942) (emphasis added). The Gaynon court did not provide further explanation as to what constituted a "single wrongful act." Subsequently, various lower Florida courts have read the Gaynon anti-splitting rule as barring multiple suits arising from a single "transaction or occurrence." See Florida Patient's Compensation Fund v. St. Paul Fire and Marine Ins. Co., 535 So.2d 335, 338 (Fla. 4th D.C.A.1988) ("one cannot revisit the same transaction or occurrence, already adjudi-

cated between the same parties, by resort to a new legal theory in a separate lawsuit."), approved 559 So.2d 195 (Fla.1990); Thermofin, Inc. v. Woodruff, 491 So.2d 344, 345 (Fla.4th D.C.A 1986) ("[t]he rule against splitting causes of action requires that all relief arising out of a single transaction or event be sought, and recovered, in one action.")

### C. Sovereign Immunity Under Florida Law

#### 1. Source and Jurisdictional Character

The Florida Supreme Court has recognized that Florida's executive and legislative branches enjoy sovereign immunity in the exercise of their "discretionary" (but not "operational") functions. Kaisner v. Kolb, 543 So.2d 732, 737 (Fla.1989). The term "discretionary" means that "the governmental act in question involve[s] an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." Kaisner, 543 So.2d at 737. This immunity is founded upon the doctrine of separation of powers embodied in the Florida Constitution, and not from any statutory basis. Kaisner, 543 So.2d at 737. Several lower Florida courts have found that the existence or absence of sovereign immunity—and whether or not it has been wholly or partially waived—is jurisdictional in nature, and can be interposed at any stage in the proceedings even if not previously raised. See Sebring Utilities Comm'n v. Sicher, 509 So.2d 968, 969 (Fla.2d D.C.A.1987) (collecting cases and noting that "governmental immunity is not an affirmative defense, but is jurisdictional and may be raised at any time."); Schmauss v. Snoll, 245 So.2d 112, 113 (Fla.3d D.C.A.1971).

### 2. Limited Waiver Under Fla. Stat. § 768.28(5)

#### i. Generally

To a limited extent, the Florida legislature has waived sovereign immunity by statute. Florida law provides as follows regarding the tort liability of a city:

> The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. *Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000.* However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agency or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it without further action by the Legislature, but the state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of its obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above. The limitations of liability set forth in this subsection shall apply to the state and its agencies and subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity before July 1, 1974.

Fla. Stat. § 768.28(5) (emphasis added). The term "state agencies or subdivisions" is defined to include "municipalities." Fla. Stat. 768.28(2).

#### ii. Operation

A trial court may render judgment for an amount of damages in excess of the § 768.28(5) cap, but upon payment of the amount of the applicable cap, the judgment creditor is required to give a satisfaction of judgment, and his or her recourse for the excess is only to the legislature. *City of Lake Worth v. Nicolas*, 434 So.2d 315, 316 (Fla.1983). No further judicial intervention is required to vacate a judgment in excess of the limited waiver provided for in Fla. Stat. § 768.28(5) because such "judgments ... may not be judicially enforced." *Rice v. Brown*, 645 So.2d 1020, 1022 (Fla.2d D.C.A.1994). A plaintiff retains the right to petition the legislature for compensatory relief in excess of the statutory limit. *Rice*, 645 So.2d at 1022.

#### iii. Defining "a claim or a judgment by any one person"

The first half of the second sentence of § 768.28(5) states that "[n]either the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000...." [the "$100,000 clause"]. The $100,000 clause "contains an explicit waiver of sovereign immunity up to $100,000 *per plaintiff.*" *Hattaway v. McMillian*, 903 F.2d 1440, 1452 (11th Cir. 1990) (emphasis supplied). This $100,000 per plaintiff limit is not affected by the presence of more than one underlying

claim,[3] and is not affected by the plaintiff's decision to consolidate multiple claims into a single action and to proceed to a single judgment. *See School Board of Broward County v. Greene*, 739 So.2d 668 (Fla. 4th D.C.A.1999) (plaintiff limited to $100,000 despite separate claims for negligence and invasion of privacy). Under the rule against splitting causes of action, a plaintiff must combine in his or her action all those claims arising out of the same transaction or occurrence as the plaintiff's original claim. Failure to do so will preclude further assertion of such claims. Accordingly, the $100,000 clause limits the maximum judicial (as opposed to legislative) recovery to $100,000 for all claims that a single plaintiff brings—or *should have* brought—in a single action resulting in a single judgment. *See Berek v. Metropolitan Dade County*, 422 So.2d 838, 840 (Fla. 1982) ("[t]he maximum amount of the state's liability to any one claimant arising out of any one incident or occurrence, therefore, is $50,000") (construing prior version of § 768.28(5)).

## III. *APPLICATION AND ANALYSIS*

### A. *The Court Must Apply Fla. Stat. § 768.28(5)*

■ Rule 69(a) requires this Court to apply Florida law regarding the enforcement of Comer's May 30, 2000 judgment. The relevant Florida law is Fla. Stat. § 768.28(5), which requires that recovery against a municipality in excess of the specified caps must be through legislative appropriation rather than judicial enforcement of a judgment. This result is not altered by the fact that Comer's complaint and the agreed jury instructions contained claims under both federal and Florida law, or that Comer predicated this Court's subject-matter jurisdiction upon the presence of a federal question. Comer points to no federal statute that would supplant § 768.28(5) with respect to the enforcement of his judgment. Indeed, Rule 69 gives Comer no greater right to enforce a negligence judgment than the right given him by the Florida legislature. Nor can the Court find a compelling federal interest in not applying § 768.28(5).[4] Comer's judgment derived entirely from his single state-law negligence claim.[5]

**3.** The inclusion in the $100,000 clause of the words "a claim or" does not alter this analysis. This is not a reference to claims that are ultimately pursued to judgment, but rather to claims that are settled short of judgment. Indeed, § 768.28(5) (fourth sentence) supports this reading by permitting a city to "settle a claim made or a judgment rendered against it." A contrary reading of the words "a claim or" suffers from two fatal flaws. First, such a reading would reduce the words "a judgment" in § 768.28(5) to mere surplusage in that every judgment is by definition based on at least one underlying claim. *See* BLACK's LAW DICTIONARY 976—77 (4th ed.1968) (defining the term "judgment," as one alternative definition, as "[t]he official and authentic decision of a court of justice based upon the respective rights *and claims* of the parties to an action or suit therein litigated and submitted to its determination.") (emphasis added). Second, such a reading ignores the well recognized "doctrine of merger" under which "a cause of action upon which an adjudication is

predicated merges into the judgment and that, consequently, the cause of action's independent existence perishes upon entry of the judgment." *Diamond R. Fertilizer Co., Inc. v. Lake Packing Partnership*, 743 So.2d 547, 548 (Fla. 5th D.C.A.1999).

**4.** A federal judge's belief that a waiver of sovereign immunity of no more than $100,000 per plaintiff is too low—or might lead to an unfair result—does not amount to a compelling federal interest. A federal judge must apply the law enacted by the legislature, and not choose a better law.

**5.** The jury's superfluous finding (in the retaliation portion of the verdict form) that Comer should be awarded damages of $50,000 to compensate for his emotional pain and mental anguish provides no more basis to avoid application of Fla. Stat. § 768.28(5) than it did to shift attorney fees. *See* Docket No. 137.

The City of Palm Bay's delay in interposing its rights under § 768.28(5) is barely excusable. The City of Palm Bay should have raised the § 768.28(5) issue in its answer [Docket No. 5], in the pretrial stipulation [Docket No. 92] and in its post-judgment motion for remittitur. Docket No. 116. Regrettably, the delay provides no basis for avoiding the application of § 768.28(5). *See City of Lake Worth v. Nicolas* and *Rice v. Brown.*[6]

### B. *Fla. Stat. § 768.28(5) Permits Comer to Seek Legislative Recovery of the Full Amount of His Judgment*

■ Comer alleges that because the negligent supervision claim underlying his $200,000 judgment comprised numerous discrete incidents and occurrences, he is not subject to the § 768.28(5)'s $100,000 cap with respect to his entire judgment, but rather that each incident or occurrence of negligence enjoys its own separate $100,000 cap. Accordingly (so the argument goes), Comer need only have proved "two separate incidents of negligent supervision to recover the entire $200,000 judgment." Docket No. 161 at 2. This argument would be persuasive if the $100,000 cap in § 768.28(5) were pegged to "incidents and occurrences" rather than "claim[s] or judgment[s]." Unfortunately for Comer this is not the case. Comer

proved his single claim of negligent supervision through various incidents, resulting in one judgment.

In support of his novel reading of § 768.28(5), Comer cites *Pierce v. Town of Hastings,* 509 So.2d 1134 (Fla. 5th D.C.A. 1987). In *Pierce,* the plaintiff pled four separate counts in his complaint, but was not allowed to present special interrogatories to the jury. The jury returned a single verdict in the amount of $65,000, which was in excess of the lower (then $50,000) cap in § 768.28(5). The trial court limited Pierce's judicial (as opposed to legislative) recovery to $50,000. The appellate court reversed, stating that "[t]he finding by the trial court that there was only one incident because both arrests arose out of enforcement of the same ordinance is patently incorrect as a matter of law." *Pierce,* 509 So.2d at 1136. The *Pierce* court's reasoning rests on the erroneous assumption that even if Pierce had presented multiple claims to the jury, he would have been entitled to the benefit of separate § 768.28(5) caps with respect to each one of his multiple underlying claims rather than a single cap with respect the resulting judgment. This is simply an incorrect reading of § 768.28(5).[7]

## IV. CONCLUSION

Comer's $200,000 jury verdict for negligent supervision was supported by the evi-

---

6. Section 768.28(5) is essentially "self-executing" as a direct result of the jurisdictional nature of sovereign immunity under Florida law. Because this Court derives its jurisdiction from the federal Constitution and federal statute as opposed to the Florida Constitution, it unlikely that this Court, as a jurisdictional matter, is required to treat § 768.28(5) as self-executing. However, the clear intent of Rule 69(a) is to afford a judgment creditor the same treatment in federal court (absent a contrary federal statute or other compelling federal interest) as he or she would receive in state court.

7. The *Pierce* court's confusion might have been due in part to § 768.28(5)'s reference to a $200,000 cap on "all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence" [the "$200,000 clause"]. However, the $200,000 clause does not apply to a case (like *Pierce*) involving a *single* claim and *multiple* incidents or occurrences. Rather, it applies only to the *converse* case—*multiple* claims arising out of a *single* incident or occurrence. *See, e.g., Rumbough v. City of Tampa,* 403 So.2d 1139 (Fla.2d D.C.A.1981) (multiple homeowners sued a city over the operation of a single landfill).

dence at trial. Docket No. 137. The jury unanimously found that the City of Palm Bay was negligent in supervising officers of the Palm Bay Police Department as to race discrimination while on duty, and that Palm Bay's negligence caused $200,000 in damage to an African–American police officer. Docket No. 111. Although Palm Bay itself is not liable under Florida law to pay a judgment that exceeds $100,000, the Florida legislature has invited Comer to submit the unpaid portion of his judgment ($96,833.53) to the legislature for payment. Fla. Stat. § 768.28(5). Accordingly, it is

**ORDERED** that plaintiff Comer's October 19, 2000 motion for writ of *mandamus* (treated as a Rule 69 motion to enforce judgment) [Docket No. 140] is **DENIED**.