NESBITT, Senior Judge.
Two girls who had been in the State’s foster care program for the past thirteen years, T.R., and Y.H., brought suit against the Department of Health and Rehabilitative Services(HRS), now known as the Department of Children and Famihes(DCF), for negligently failing to protect them from abusive doctors, foster parents, and other third parties, and for negligently failing to arrange for their adoption. The girls had been abandoned by their mother in 1986 and placed under the Department’s care. From that time until the time of trial in 1999, the girls were in the custody of the State pursuant to an adjudication of dependency.
Hearing the girls’ claims, including allegations that they had been sexually and physically abused, raped, burned, and improperly medicated, a jury ultimately awarded T.R. $2,080,000, and Y.H. $2,345,000. The Department appeals that *982 verdict. The girls cross appeal, claiming that the trial court erred in failing to allow demonstrative exhibit costs.
We agree that the girls are entitled to recover for the damages suffered as a result of the Department’s negligence in certain operational decisions made in the girls’ care and supervision. See Department of Health and Rehab. Servs. v. Yamuni, 529 So.2d 258 (Fla.1988). However, we find that several erroneous evidentiary rulings, as well as an apparent misinterpretation of section 768.28(5), Florida Statutes (2000), mandate reversal and remand for retrial. We also reverse the order on cross appeal, which should be reconsidered at the conclusion of retrial.
I. The trial court failed to distinguish planning from operational type claims.
A legion of cases point to the planning versus operational distinction in considering application of the doctrine of sovereign immunity. That distinction was fully explained in Department of Health & Rehab. Servs. v. B.J.M., 656 So.2d 906, 911-13 (Fla.1995), where the court concluded that the decisions of HRS regarding the placement of a juvenile and rehabilitative services provided for a juvenile constituted performance of a discretionary governmental function for which the government was immune. Explaining its analysis the Supreme Court observed:
At the outset, we distinguish the HRS function at issue, the allocation of services, from the actions at issue in Department of Health & Rehab. Servs. v. Whaley, 574 So.2d 100 (Fla.1991), and Department of Health & Rehab. Servs. v. Yamuni, 529 So.2d 258 (Fla.1988). Both Whaley and Yamuni involved HRS caseworker-level decisions concerning the physical safety of children within the agency’s protective custody which did not implicate any “discretionary planning or judgment function” as contemplated by Trianon. [Trianon Park Condo. Ass’n v. City of Hialeah, 468 So.2d 912 (Fla.1985) ] Neither case involved discretionary calls with regard to choice of services. Whaley involved the physical placement of a child in a specific room in an HRS detention facility known by HRS to be occupied by dangerous juveniles. We held that placing the child in such danger was an operational function not protected by sovereign immunity. 574 So.2d at 101. In Yamuni, we held that HRS’s negligent failure to adequately protect a child from further physical abuse also occurred on an operational level. 529 So.2d at 260. These operational level decisions exposing children to specific dangers should be distinguished from the broad discretionary authority vested by the legislature in HRS to determine an appropriate course of remedial treatment for the children that come within its custody through dependency and delinquency proceedings.
Id. at 913. Permitting a jury’s consideration of evidence of both planning and operational activities when deciding a plaintiffs claim of Department negligence mandates reversal and remand for retrial. See Lee v. Dept. of Health and Rehab. Servs., 698 So.2d 1194 (Fla.1997).[1] This is *983 exactly the error the trial court made in the instant case.
A review of the record demonstrates that, over defense objection, the trial judge permitted the jury’s consideration of evidence of both planning and operational activities. For example, the court permitted evidence of DCF’s alleged negligence in spending $317,000,000 in Dade County and not having sufficient case workers but having too many administrators. The court also permitted evidence of the Department’s actions in allowing a 40% caseworker turnover rate, as well as the Department’s formation of the Family Service Planning Team Program, which plaintiffs argued did not best utilize Department resources. Thus, over the Department’s objection, in addition to the evidence of negligence properly before the jury, the trial judge allowed the presentation of evidence going to planning level decisions. As was the case in Lee, the admission of this later evidence requires reversal.
II. Interpreting Section 768.28(5).
The next point mandating reversal is the trial court’s misinterpretation of section 768.28(5), Florida Statutes (2000). The trial court’s determination to have the jury decide the number of “incidents” of negligence reflects the court’s apparent conclusion that plaintiffs could recover $100,000 per identified act of Department negligence. As previously stated, section 768.28(5) provides a limit for how much a plaintiff can recover from a government agency. The plaintiff may then seek the balance of his judgment from the Florida Legislature. See Gerard v. Dept. of Transp., 472 So.2d 1170, 1172-73 (Fla.1985). Just how section 768.28(5) should be interpreted is in question. That section provides:
(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agen *984 cy or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it without further action by the Legislature, but the state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of its obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above. The limitations of Lability set forth in this subsection shall apply to the state and its agencies and subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity before July 1, 1974. (Emphasis added.)
Comer v. City of Palm Bay, 147 F.Supp.2d 1292 (M.D.Fla.2001), outlines two conflicting views of the proper interpretation to be given this section. Comer explains:
[Plaintiff] alleges that because the negligent supervision claim underlying his $200,000 judgment comprised numerous discrete incidents and occurrences, he is not subject to the § 768.28(5)’s $100,000 cap with respect to his entire judgment, but rather that each incident or occurrence of negligence enjoys its own separate $100,000 cap. Accordingly (so the argument goes), Comer need only have proved “two separate incidents of negligent supervision to recover the entire $200,000 judgment.” Docket No. 161 at 2. This argument would be persuasive if the $100,000 cap in § 768.28(5) were pegged to “incidents and occurrences” rather than “claim[s] or judgment[s].” Unfortunately for Comer this is not the case. Comer proved his single claim of negligent supervision through various incidents, resulting in one judgment.
In support of his novel reading of § 768.28(5), Comer cites Pierce v. Town of Hastings, 509 So.2d 1134 (Fla. 5th D.C.A.1987). In Pierce, the plaintiff pled four separate counts in his complaint, but was not allowed to present special interrogatories to the jury. The jury returned a single verdict in the .amount of $65,000, which was in excess of the lower (then $50,000) cap in § 768.28(5). The trial court limited Pierce’s judicial (as opposed to legislative) recovery to $50,000. The appellate court reversed, stating that “[t]he finding by the trial court that there was only one incident because both arrests arose out of enforcement of the same ordinance is patently incorrect as a matter of law.” Pierce, 509 So.2d at 1136. The Pierce court’s reasoning rests on the erroneous assumption that even if Pierce had presented multiple claims to the jury, he would have been entitled to the benefit of separate § 768.28(5) caps with respect to each one of his multiple underlying claims rather than a single cap with respect [to] the resulting judgment. This is simply an incorrect reading of § 768.28(5). (Footnote omitted.)
Id. at 1299. Thus, Comer concludes that a single plaintiff will always have at most one claim of $100,000. Pierce authorizes consideration of the number of incidents. As Comer, 147 F.Supp.2d at 1299 n. 7, explains:
• The Pierce court’s confusion might have been due in part to § 768.28(5)’s reference to a $200,000 cap on “all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence” [the “$200,000 clause”]. However, the $200,000 clause does not apply to a case (like Pierce) involving a single claim and multiple incidents or occurrences. Rather, it applies only to the converse case — multiple claims arising out of a *985 single incident or occurrence. See, e.g., Rumbough v. City of Tampa, 403 So.2d 1139 (Fla.2d D.C.A.1981) (multiple homeowners sued a city over the operation of a single landfill).
Our task is not to set out a rule for every eventuality. Rather, we must apply the statute to the instant case. Here, for the purposes of considering the $100,000 cap of section 768.28(5), each girl had a single claim for the Department’s negligence while under its care.[2] The girls may certainly seek recovery for all injuries suffered as a result of the Department’s negligence in the performance of its operational level decisions. However, the fact that the behavior at issue spanned a number of years and included a number of different actions by a number of state employees does not change the fact that the claims in full amounted to no more than each girl’s single claim against the Department for the injuries she suffered while under its supervision. Therefore, the single statutory cap of $100,000 per girl must apply. Again, this is not to say that the girls may not seek their full recovery, but merely that the portion of the judgment exceeding $100,000 per girl must be sought from the Legislature. See § 768.28(5); Gerard, 472 So.2d at 1173.
We believe the reading of the statute advocated by the plaintiffs could lead to the absurd result of making the statutory cap prescribed by section 768.28(5) meaningless. For example, such a reading would allow a plaintiff, after having been operated on, to accuse a state hospital surgeon of using the wrong medicine, performing some procedure too slowly, and closing in an improper manner, and as such performing three separate “incidents” of negligence, thereby subjecting the state hospital to three separate $100,000 caps. Moreover, in the weeks that followed, if this patient’s doctors or nurses did several more things in a negligent fashion, the plaintiff could proceed to tack on a few more incidents, and take advantage of a few more $100,000 statutory caps. We do not find such an interpretation of section 768.28(5) to be either reasonable or functional.
Based on the jury’s identification of eight incidents of negligence, the result, as argued by the plaintiffs, is to provide for the recovery of $800,000 from the Department, before proceeding to the Legislature. While we do not doubt the severity of the girls’ injuries, their recovery must be within the bounds as set out by the Florida legislature.
III. Conclusion
Two distinct errors mandate reversal. First, the jury was allowed to hear and consider matters for which recovery was completely barred by the doctrine of sovereign immunity. Second, acting under the misapprehension that the plaintiffs *986 could recover for each “incident” identified, the jury was instructed to identify the number of incidents of negligence which occurred. What should have been the focus of the court’s inquiry was the operational level decisions which exposed the girls to specific dangers. Because the damages awarded in the instant case may have been based in part on evidence of the Department’s planning level decisions, the jury’s award cannot stand.
On remand, it will be the jury’s task, guided by the trial judge, to determine the nature and extent of any damages these girls suffered as a result of the Department’s operational level decisions. Each of the two girls may recover the statutory maximum of $100,000 from the Department and seek the balance of the jury’s award from the Legislature.[3] Reversed and remanded.[4]
GERSTEN, J., concurs.

. In Lee, a mentally retarded woman, D.L., became pregnant while in HRS custody. Her guardian brought an action against HRS, asserting the breach of its duty of care by failing to use reasonable care in D.L’s oversight and supervision. The claimant argued that HRS was negligent in establishing the level of supervision in the facility to which D.L. was assigned, particularly because it implemented a 1:8 and a 1:16 ratio of employee for patient care rather than the 1:2 ratio required by state administrative rules. Second, she ar *983 gued that HRS employees were negligent in failing to properly follow rules and carry out their assigned duties. This claim was supported by evidence that patients had been left at a dance without proper supervision and that an HRS employee had failed to file a incident report, despite having witnessed the inappropriate touching of D.L. by another patient.
The court decided recovery was barred as to the first claim, observing that "[t]he record clearly establishes that the claimant was arguing against the interpretation and implementation of rules governing the supervision of patients and the normalization policy, which are immune discretionary policy-level functions.” Lee, 698 So.2d at 1198. However, the claim of negligence on the part of HRS employees in supervising patients was not barred.

. We acknowledge that dicta in School Board of Broward County v. Greene, 739 So.2d 668 (Fla. 4th DCA 1999), might indicate that court’s analysis of section 768.28(5), may be different than our own. In Greene, a teacher brought an action against a school board for negligence and invasion of privacy after the school board released derogatory statements about the teacher. The Fourth District concluded that the teacher’s award of damages from the school board for releasing derogatory information about the teacher was limited to the recovery for one occurrence under the sovereign immunity statute, rather than recovery for two occurrences, even though the teacher prevailed on his claims of both negligence and invasion of privacy. However the court observed that while the plaintiff asserted that there were two occurrences, i.e., placing the information in his file, and releasing the information to the public, neither the jury instructions nor the verdict form presented the issue of placing the information in the personnel file to the jury. Thus, the court left open the possibility of a different result on proper allegation and proof.

. Contrary to the DCF’s position, we agree with the trial court's conclusion that the evidence of negligence from the years 1986 to 1992 was not barred by the Statute of Limitations. See Drake v. Island Cmty. Church, Inc., 462 So.2d 1142, 1144 (Fla. 3d DCA 1984).

. Prior to this opinion the case was styled under the name of “Two Forgotten Children ...” For obvious reasons, such styling was employed to create sympathy for the children. This was inappropriate. Every trial attorney knows that a jury is instructed by the trial judge before the jury retires that "you are not to be swayed from the performance of your duty by prejudice, sympathy or any other sentiment for or against any party.” Fla. Std. Jury Instr. (Civ.) 7.1. For this reason, the style of this case has been properly changed to the children's initials followed by their guardian. Of course, the appellees' attorney is free to present such an argument during summation, so long as there is reasonable evidence to support it.