Warner, J.
*751 The issue presented in this case is one of first impression involving section 768.28(5), Florida Statutes (2010), waiver of sovereign immunity in tort actions. That statute limits to $200,000 the amount of liability of the state or its subdivisions for all claims or judgments "arising out of the same incident or occurrence."[1] This underlying suit was brought by the fathers of children killed and injured by their stepfather on one murderous night. The fathers claimed negligence by the Department of Children and Families in its investigation of the family, and the trial court determined that the death of each child constituted an independent "incident or occurrence" for purposes of the statutory cap in the waiver statute. Therefore, each wrongful death or personal injury claim would be eligible for the $100,000 per person and $200,000 total claims limitations. Because statutes waiving sovereign immunity must be strictly construed, and any statute waiving sovereign immunity must be clear and unequivocal, the trial court erred in concluding that each death or injury constituted an independent incident or occurrence. We reverse.
Patrick Dell and Natasha Dell were married and had two children together. Natasha also had five children from two previous relationships, four with appellee Michael Barnett and one with Leroy Nelson. All of the children lived with her. According to the complaint filed in this action, the relationship between Patrick and Natasha was marred by domestic violence, and police had been called to their home many times. On December 20, 2009, a particular incident occurred where Patrick threatened Natasha with a knife and uttered threats against the entire family. That altercation was reported to DCF, which launched an investigation. After interviewing both parties, as well as the older children who all said that they did not fear for their safety, the investigator closed his file.
Nine months after the investigation was closed, Patrick, now an estranged husband, entered the home, where he shot and killed three of the Barnett children and the Nelson child. The other Barnett child was injured but not killed. The Dell children were not harmed. Patrick then killed Natasha and himself.
In their capacity as personal representatives of their children's estates and on behalf of the injured child, the fathers filed separate suits against DCF for negligence in its investigation. In its answer, DCF alleged that there was sovereign immunity for any amounts recovered above the statutory caps contained in section 768.28(5), Florida Statutes (2010). The Department of Financial Services-the agency in charge of payment of any judgment-was granted leave to intervene. It filed a declaratory judgment, requesting the court to determine each of the fathers' rights under section 768.28(5), Florida Statutes (2010), which provides in part:
*752 Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000.
After further discovery, the fathers filed a motion for summary judgment against both DCF and DFS. The motion framed the issue as "whether the murders of four children and the shooting of a fifth child, by separate gunshots, delivered in separate locations, at separate times, are five separate 'incidents' or 'occurrences' for purposes of sovereign immunity." In rendering a declaratory judgment, the trial court found that each claim, as presented in this particular case, constituted an independent incident or occurrence. Therefore, it concluded that "each wrongful death or personal injury claim [was] eligible for the $100,000 per person and $200,000 per claim limitation found in Florida Statute § 768.28(5)." DFS appeals the declaratory judgment.[2] We review statutory construction de novo. Maggio v. Fla. Dep't of Labor & Emp't Sec. , 899 So.2d 1074, 1076 (Fla. 2005).
At common law, the state possessed immunity from suit as an aspect of its sovereignty. See Spangler v. Fla. State Tpk. Auth. , 106 So.2d 421, 424 (Fla. 1958). "Sovereign immunity's roots extend to medieval England. The doctrine flows from the concept that one could not sue the king in his own courts; hence the phrase 'the king can do no wrong.' " Cauley v. City of Jacksonville , 403 So.2d 379, 381 (Fla. 1981). Pursuant to the Florida Constitution, however, "The people of Florida vested the power to waive immunity in the Florida legislature at an early date." Id. (citing Art. IV, § 19, Fla. Const. (1868) (now Art. X, § 13, Fla. Const.) ). However, because waiver is an abrogation of the sovereignty of the state, courts have strictly construed any statute waiving immunity to protect the public purse.
Inasmuch as immunity of the state and its agencies is an aspect of sovereignty, the courts have consistently held that statutes purporting to waive the sovereign immunity must be clear and unequivocal. Waiver will not be reached as a product of inference or implication. The so-called 'waiver of immunity statutes' are to be strictly construed. This is so for the obvious reason that the immunity of the sovereign is a part of the public policy of the state. It is enforced as a protection of the public against profligate encroachments on the public treasury.
Spangler , 106 So.2d at 424. As such, "[s]tatutes purporting to waive sovereign immunity are strictly construed, and must be clear and unequivocal." State ex rel. Div. of Admin. v. Oliff , 350 So.2d 484, 486 (Fla. 1st DCA 1977) (alteration added).
The legislature did not define "incident or occurrence" in section 768.28(5). Limited case law has applied the statute to cases involving multiple claimants and a single tortious act. In Rumbough v. City of Tampa , 403 So.2d 1139, 1142-43 (Fla. 2d DCA 1981), the court considered the meaning of the terms in determining whether a city-created nuisance was one incident or occurrence when it produced injury to properties over time. In *753 Rumbough , landowners sued the city for nuisance, claiming that foul odors from an expanded landfill impaired the use of their land. Id. at 1140. Prior to the suit, the city had already paid $100,000 in damages to other landowners for the same nuisance. Id. at 1142. The court found that because the nuisance amounted to an "occurrence," "continuing in nature" and creating damage over time, the city's payment of other claims were payments arising out of the same occurrence which had exhausted the statutory aggregate limit. Id. at 1142-43. The "occurrence" was tied to the negligence of the state actor, not to the damages resulting from the negligent acts. Id.
In Orange County v. Gipson , 539 So.2d 526, 527 (Fla. 5th DCA 1989), the county was sued for creating an attractive nuisance. Two children were crossing a canal over sewer pipes owned by the city. Id. One of the children slipped into the water and became entangled in weeds. Id. The other jumped in to save him and both drowned. Id. Their estates sued the city and the county. Id. Those claims were treated as one "incident." Id. at 529-30.
In City of Miami v. Valdez , 847 So.2d 1005, 1006 (Fla. 3d DCA 2003), the court considered the application of the statutory caps to a case where two vehicle occupants were injured in an accident with a police vehicle. One occupant filed suit against the city and obtained a multi-million dollar verdict on a single count of negligence. Id. The city settled, paying the occupant the $100,000 statutory cap, and then assisted him in the passage of a legislative claims bill for him to obtain the $4.9 million balance. Id. When the other occupant filed suit, the city maintained that because of the legislative payment to the first occupant, it was not liable to the second occupant for the statutory cap of $100,000 per person. Id. The city further argued it also exhausted the $200,000 cap per incident because of its compliance with the $4.9 million special claims bill in favor of the first occupant. Id. The appellate court affirmed the trial court's determination that the city was liable for the $100,000 left on the aggregate statutory cap and could not offset that obligation through the legislative payment to the first occupant. Id. at 1009. In other words, both vehicle occupants could collect $100,000, because the combined total did not exceed the aggregate $200,000 statutory cap. Id. Thus, Valdez applied the cap where there was a single tortious act causing multiple injuries.
In a case brought by two sisters claiming negligent supervision by DCF, similar to the present case, the court held that each child presented a single claim of negligent supervision, even though the negligence spanned several years and involved multiple individual acts of negligence. State Dep't of Health & Rehab. Servs. v. T.R. ex rel. Shapiro , 847 So.2d 981, 985 (Fla. 3d DCA 2002). All of the children's damages were limited by the $100,000 per person limitation in the statute. Id. The court considered the negligent claim against the Department as a single claim for each child, despite the fact that there were several acts of negligence by various state employees included in that claim.
The current case involves a single claim of negligence against the Department in the failure to properly investigate the family and the stepfather before closing its file. Thus, each estate's claim and the claim of the injured child arise from the same incident of negligence of the Department. Therefore, the $200,000 cap per incident or occurrence applies to limit recovery for all claims.
The appellees rely on Zamora v. Florida Atlantic University Board of Trustees , 969 So.2d 1108 (Fla. 4th DCA 2007), as support for their position that each murder constituted *754 a separate "incident or occurrence." Zamora , however, involved a single plaintiff making two separate and distinct claims of discrimination and retaliation against the appellee. Our court was not applying the aggregate cap but determining whether two disparate claims occurred. Id. at 1114. We applied the doctrine of res judicata to determine whether there were one or two claims brought by the single plaintiff. Because two separate negligent acts resulted in two separate incidents of discrimination and two separate damage awards, a separate statutory damage cap would apply to each claim. Id.
Appellees contend that we should apply the principle of res judicata to this case as well. Under res judicata, they argue, because there is no identity of persons, the claims do not constitute a single claim. However, that would mean that where there are multiple claimants, res judicata would never bar claims, because separate claims would lack identity of parties. Thus, even in cases such as Valdez , involving a single auto accident causing damages to two persons, they would be considered two separate incidents. Such an interpretation would write out the $200,000 limitation on liability entirely. While res judicata is useful in determining whether a single plaintiff has multiple claims or a single claim, it has no application to cases where there are multiple plaintiffs asserting a single claim of negligence against the state actor.
The trial court and appellees also rely on Koikos v. Travelers Ins. Co. , 849 So.2d 263 (Fla. 2003), involving the interpretation of a commercial insurance policy. There, during a brawl in a restaurant, two patrons were injured by shots fired by another patron. Id. at 265. The restaurant was sued for negligence, and it filed a declaratory judgment against its insurance company, asserting that each injury was a separate "occurrence" under the policy language. Id. The case was removed to a federal district court. Id. The case reached the supreme court on a question from the federal court, and the supreme court held that when the insured is being sued for negligence in failing to provide security, the "occurrence" under the policy is the act that caused the damages, not the underlying negligence by the insured. Id. at 271.
Koikos , however, is inapplicable for two reasons. First, it is based upon the definition of "occurrence" under an insurance policy, a definition which is not found in the statute. Second, and most importantly, insurance policies are to be construed liberally in favor of the insured, which Koikos relied on in reaching its construction. Any ambiguities must be construed against the drafter of the policy. This is exactly opposite to the sovereign immunity waivers, which must be strictly construed with any ambiguities being resolved against waiver. See Spangler . Therefore, the Koikos analysis does not apply to section 768.28(5).
We acknowledge that if we were to construe the statute liberally in favor of a waiver, the trial court's construction is reasonable. But we must construe it strictly, and the statute does not clearly and unambiguously waive sovereign immunity to the extent that the shooting of each child constitutes a separate occurrence. To construe it in such a manner would be contrary to the policies supporting sovereign immunity.
Although appellees' recoveries through a judgment may be substantially limited by section 768.28(5), they are not without remedy. The legislature may approve a claims bill authorizing further compensation. While this is a cumbersome process, the legislature has deemed it necessary to assure the protection of the state's revenues to the good of the entire population.
*755 If the process is objectionable to the public in situations such as this, where multiple parties make claims against a state actor for a single tort, then the remedy is to petition the legislature to change the law.
For the foregoing reasons, we hold that section 768.28(5) waives sovereign immunity up to $200,000 for all claims or judgments arising out of the claims of negligent supervision by DCF brought in this case.
Reversed and remanded for entry of a declaratory judgment consistent with this opinion.
May and Forst, JJ., concur.

Prior to 1981, the limit was $50,000 per person and $100,000 for all claims arising out of the same incident or occurrence. The limit was increased to $100,000 per person and $200,000 for all claims arising out of the same incident or occurrence in 1981. See Ch. 81-317, § 1, Laws of Fla. After 2010, the legislature amended the statute again, and the limit was increased to $200,000 per person and $300,000 for all claims arising out of the same incident or occurrence. See Ch. 10-26, § 1, Laws of Fla.

We have jurisdiction because the declaratory judgment terminates the case as to a party (DFS). See Fla. R. App. P. 9.110(k). The order also ruled on entitlement to sovereign immunity as a matter of law. Thus, it is appealable pursuant to Florida Rule Appellate Procedure 9.130(a)(3)(C)(xi).