[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13182

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 15, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-62151 CV-JEM

LEOLA BRADSHAW,

Plaintiff-Appellee,

versus

SCHOOL BOARD OF BROWARD COUNTY,
FLORIDA, a governmental agency,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 15, 2007)**

Before BIRCH, FAY and CUDAHY,* Circuit Judges.

_____

*Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by
designation.

CUDAHY, Circuit Judge:

This case concerns a state's purported limitation on judgments against itself and its agencies, and what effect such a limitation has on a federal court judgment for violations of parallel federal and state civil rights statutes. A federal jury returned a verdict in favor of Leola Bradshaw against her employer, the School Board of Broward County, Florida, finding that Bradshaw's supervisor had sexually harassed her in violation of the Florida Civil Rights Act and Title VII of the Civil Rights Act of 1964. It found her entitled to $500,000 in compensatory damages for emotional distress. Unfortunately for her, that verdict does not support an enforceable $500,000 judgment because of federal and state law limits on compensatory damage awards. The parties dispute how much she should get: Bradshaw claims, and the district court agreed, that she is entitled to a $400,000 judgment; the School Board claims she is entitled only to $300,000.

Bradshaw's award is limited only by the *combined* effect of state *and* federal law limits on damages. The jury was not instructed to apportion its award of damages between Bradshaw's federal law and state law claims, which is as it should be. The substantive prohibitions of Title VII and the Florida Civil Rights Act are not importantly different–indeed, the Florida CRA apes the relevant language of Title VII almost perfectly, *compare* Fla. Stat. § 760.10(a)(1) *with* 42

2

U.S.C. § 2000e-2(a)(1)–and the very same conduct violates both statutes. *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004); *Natson v. Eckerd Corp.*, 885 So.2d 945, 947 (Fla. Dist. Ct. App. 2004). To declare that any part of Bradshaw's injury could be remedied under only one of the two statutes would be senseless; it would be equally improper to let part of her injury go unremedied absent a legislative command to do so. So if Title VII cannot remedy the full extent of her injury because of its damage cap, then the remaining portion of her injury should be remedied as much as possible under the Florida CRA, and vice versa. *Rodgriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 65-66 (1st Cir. 2005); *Hall v. Consol. Freightways Corp. of Del.*, 337 F.3d 669, 678-80 (6th Cir. 2003); *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 570-71 (3d Cir. 2002); *Passantino v. Johnson & Johnson Consumer Prods. Inc.*, 212 F.3d 493, 509-510 (9th Cir. 2000); *Martini v. Fed. Nat. Mortgage Ass'n*, 178 F.3d 1336, 1349-50 (D.C. Cir. 1999); *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 576 (8th Cir. 1997).

We turn, then, to the relevant federal and state law limiting Bradshaw's recovery, starting with the federal cap. Compensatory damages may be awarded under Title VII for intentional discrimination on the basis of sex, 42 U.S.C. § 1981a(a)(1), but the statute limits the award to certain fixed amounts, depending

3

on how many people the defendant employs. The School Board in this case employs more than 500 people, so up to $300,000 may be awarded under Title VII for Bradshaw's suffering. *Id.* § 1981a(b)(3)(D).

The federal cap does not limit damages under parallel state laws, however; Congress expressly disclaimed any such intention. *See* 42 U.S.C. §§ 2000e-7 & 2000h-4. If possible, then, the remaining $200,000 of Bradshaw's jury verdict should be thrown into a judgment under the Florida CRA.

Normally that would be possible; the Florida CRA, unlike Title VII, contains no general damages cap. However, it does limit the "total amount of recovery against the state and its agencies and subdivisions," which the parties agree includes the School Board. Fla. Stat. § 760.11(5). Recovery against the state "shall not exceed the limitation as set forth in s. 768.28(5)," a section of the Florida code captioned "Waiver of sovereign immunity in tort actions":

> The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. *Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000* or any claim or judgment, or portions there of, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts

4

and may be settled and paid pursuant to this act up to $100,000 or $200,000 as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. (emphasis added)

The parties' dispute concerns the effect of this provision. Bradshaw reads it to cap her recovery under the Florida CRA at $100,000, much like her recovery under Title VII is limited to $300,000. Arithmetic and the imperative to secure her the fullest possible recovery would produce a total judgment of $400,000. The district court agreed with her.

In so doing, it ignored an important difference between the two statutes. The Title VII provision caps only "the amount of compensatory damages awarded *under this section*," 42 U.S.C. §1981a(b)(3) (emphasis added), and other provisions of Title VII disclaim any intent to limit awards under other statutes. Section 768.28(5), by contrast, limits the size of "a claim or a judgment by any one person." One might read "claim" to indicate a claim under a particular statute, a cause of action, but Fla. Stat. § 768.28(5) limits the size of a claim *or* judgment, and a judgment can be based on multiple causes of action. Consequently, courts have read it to limit the entire judgment that an individual plaintiff can recover in a single case, regardless of the number of causes of action upon which the judgment

5

is predicated. *State Dep't of Health & Rehab. Servs. v. Shapiro*, 847 So. 2d 981, 984-85 (Fla. Dist. Ct. App. 2003) (holding that § 768.28(5) limits "how much a plaintiff can recover," regardless of the number of underlying factual incidents); *Comer v. City of Palm Bay,* 147 F. Supp. 2d 1292, 1297-98 (M.D. Fla. 2001) ("This $100,000 per plaintiff limit is not affected by the presence of more than one underlying claim."); *Sch. Bd. of Broward County v. Greene*, 739 So. 2d 668, 670 (Fla. Dist. Ct. App. 1999) ("Greene is limited to $100,000 notwithstanding that Greene prevailed on two separate theories of recovery."); *Hattaway v. McMillian*, 903 F.2d 1440, 1452 (11th Cir. 1990) (stating that the provision "contains an explicit waiver of sovereign immunity up to $100,000 per plaintiff").[1]

The result, in cases under both Title VII and the Florida CRA, is a state discrimination remedy sensitive to the size of a parallel federal remedy, which proportionately shrinks as the federal remedy grows. Say Bradshaw worked for a smaller employer, one with less than one hundred employees. Then she could

---

[1] There is some dispute in the Florida courts over whether a plaintiff should be able to recover $100,000 for each separate "incident" giving rise to relief. *Compare Shapiro*, 847 So. 2d at 984-85 (holding that multiple incidents do not get separate recovery limits), *with Pierce v. Town of Hastings*, 509 So. 2d 1134, 1136 (Fla. Dist. Ct. App. 1987) (holding that multiple incidents get separate recovery limits). The question arises from the statute's limitation of liability for judgments "which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000." Fla. Stat. § 768.28(5). We need not discuss this complication, since Bradshaw does not claim that the sexual harassment she suffered constituted several separate incidents as opposed to a single incident.

recover only $50,000 of compensatory damages under Title VII. 42 U.S.C. § 1981a(b)(3)(A). Florida's sovereign immunity limit would not apply until the total judgment reached $100,000, so Bradshaw's $500,000 verdict would win her a $100,000 judgment ($50,000 under Title VII; $50,000 under the Florida CRA).

What would happen to Bradshaw's total recovery if the School Board employed between 100 and 200 employees, raising the potential Title VII recovery to $100,000? 42 U.S.C. § 1981a(b)(3)(B). Nothing. Because the state law sovereign immunity limit applies to the entire judgment, the change only lets federal law eat up more of the limit. Bradshaw would still be entitled to a $100,000 judgment (all of which could be assigned to Title VII, if that mattered).

Of course, where Title VII authorizes an award *greater* than $100,000, the Supremacy Clause ensures that Florida can do nothing to limit the size and execution of a federal award. U.S. Const. art. VI, cl. 2; *Bowman v. City of New Orleans*, 914 F.2d 711, 712-13 (5th Cir. 1990); *Arnold v. BLaST Intermediate Unit 17*, 843 F.2d 122, 126 (3d Cir. 1988); *Spain v. Mountanos*, 690 F.2d 742, 745-46 (9th Cir. 1982); *Collins v. Thomas*, 649 F.2d 1203, 1206 (5th Cir. Unit A July 1981); *Gary W. v. State of Louisiana*, 622 F.2d 804, 806-07 (5th Cir. 1980). In the present case, federal law conclusively permits Bradshaw to recover at least $300,000. But at the same time Florida law does nothing to extend the judgment;

7

the $100,000 limit has already been reached and Florida has not obligated the School Board any further.

Bradshaw argues that the Civil Rights Act contains anti-preemption provisions that, oddly enough, preempt Florida's limits on its remedy. She invokes the Act's 42 U.S.C. § 2000h-4, which disclaims any intent to occupy the field of antidiscrimination law while nonetheless invalidating any state law "inconsistent with any of the purposes of this Act, or any provision thereof." But Florida's limited remedy is consistent with Title VII, which permits states to enact their own antidiscrimination laws, but does not *require* states to do so, or to have them enforced with any particular remedy. There is "no statutory language or legislative history suggesting that the federal interest in state fair employment laws extends any farther than saving such laws from preemption by Title VII itself." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 n.24 (1983). The Supreme Court in *Shaw* determined that, "Quite simply, Title VII is neutral on the subject of all employment practices it does not prohibit." *Id.* at 103. There is no reason to regard it as any more invested in the subject of remedies it does not itself provide, and that a state does not wish to provide.[2] *See also Cal. Fed. Sav. & Loan Ass'n v.*

---

[2] Once a state decides to provide some sort of an antidiscrimination remedy, Title VII has an interest in allowing it time to operate and potentially resolve the dispute before involving the EEOC or the federal courts. *See* 42 U.S.C. § 2000e-5; *Shaw*, 463 U.S. at 101-02. But to reiterate,

*Guerra*, 479 U.S. 272, 290 n.29 (1987) ("Of course, since the [Pregnancy Discrimination Act, amending Title VII] does not itself prohibit different treatment, it certainly does not require the States to do so.").

Bradshaw also invokes the Title VII anti-preemption provision, 42 U.S.C. § 2000e-7, which states:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

Bradshaw claims that by holding that Fla. Stat. § 768.28(5) limits her Florida CRA award to nothing in light of the $300,000 Title VII award, we would deem Title VII to relieve the School Board of liability under the Florida CRA. (She could alternatively argue that Florida itself has "deemed" Title VII to relieve it of liability by adopting § 768.28(5).) The argument continues: because Title VII may not, under 42 U.S.C. § 2000e-7, be deemed to provide such relief, we must invalidate the Florida sovereign immunity provisions that have the effect of

---

Title VII's protection of and deference to antidiscrimination laws that states choose to put in place do not *require* them to have any sort of law or remedy. *Shaw*, 463 U.S. at 103 n.24 ("Title VII did not create new authority for state anti-discrimination laws; it simply left them where they were before the enactment of Title VII.")

9

reducing the potential Florida CRA recovery by the amount of the parallel Title VII recovery in this case.

The argument is clever but wrong, because our conclusion does not require us to interpret Title VII at all.  Like 42 U.S.C. § 2000h-4, section 2000e-7 is an anti-preemption provision that allows states latitude in the design of their own antidiscrimination law.  *See Cal. Fed. Sav. & Loan*, 479 U.S. at 281 (describing § 2000e-7 as "indicat[ing] that state laws will be pre-empted only if they actually conflict with federal law"); *Shaw*, 463 U.S. at 101 (describing § 2000e-7 as "expressly preserv[ing] nonconflicting state laws"); *Malabed v. N. Slope Borough*, 335 F.3d 864, 870-71 (9th Cir. 2003); *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 710 (9th Cir. 1997); *Shehadeh v. Chesapeake & Potomac Tel. Co. of Md.*, 595 F.2d 711, 723 n.60 (D.C. Cir. 1978).  Title VII will not be "deemed" (that is, construed) to prevent states from imposing liability in any way they see fit, so long as the states do not interfere with Title VII by requiring or permitting acts that Title VII would forbid.  In the present case, Florida does not want to impose liability for compensatory damages beyond Title VII's cap.  We therefore do not deem Title VII to limit Bradshaw's state law recovery; the relevant state law itself limits the recovery. Bradshaw's argument posits a nonexistent remedy, then uses

10

Title VII to invalidate the actual law that fails to grant her that remedy. It is pure bootstrapping.

Even if we could reasonably construe 42 U.S.C. § 2000e-7 to invalidate limits on state remedies that are sensitive to the size of a parallel Title VII award, we would be reluctant to attribute such an intent to Congress because it would make little sense and might hurt future plaintiffs. Florida is currently willing to be liable under its own law for up to $100,000, but only in situations where federal law does not provide a remedy of that amount. If Florida had to make itself liable in all cases, regardless of a plaintiff's Title VII recovery (perhaps putting the state treasury on the hook for quite a bit more money), it might lower the maximum award it is willing to pay. If the new amount chosen is low enough (less than $50,000), the revised remedy would leave employees of small state agencies worse off than under current law.

We therefore conclude that the district court was wrong. Bradshaw is not entitled to get $400,000 from the School Board through legal process, only to get $300,000. We say "get $300,000" because that is the only judicially enforceable judgment that she can obtain, although she arguably might be entitled to a larger but unenforceable judgment. Florida law states that "a judgment or judgments may be claimed *and rendered* in excess" of the statutory limits; the state shall not

11

be "liable" to pay the excess, but it may, in its discretion, choose to pay it through a legislative claims bill. Fla. Stat. § 768.28(5) (emphasis added); *see also Gerard v. Dep't of Transp.*, 472 So. 2d 1170, 1172-73 (Fla. 1985); *Berek v. Metro. Dade County*, 422 So. 2d 838, 840 (Fla. 1982). Florida has no authority to render federal judgments unenforceable unless federal law grants it, but the execution of a money judgment in a federal district court "shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." Fed. R. Civ. P. 69(a); *Balfour Beatty Bahamas Ltd. v. Bush*, 170 F.3d 1048, 1050 (11th Cir. 1999); *Keishan v. Buckley*, 800 F.2d 1047, 1048-49 (11th Cir. 1986). It could be argued, then, that the district court should have entered judgment for $500,000, but then granted a writ of execution for only $300,000 when Bradshaw sought to enforce the judgment.

The distinction is important only if it affects Bradshaw's legal right to receive or practical chances of receiving a claims bill from the Florida legislature. A review of the Florida constitutional and statutory provisions governing claims bills reveals nothing to suggest a $300,000 judgment will present a legal bar. *See* Fla. Const. art. III, §§ 10 & 11 (addressing "special laws"); Fla. Stat. §§ 11.02, 11.065 & 11.066 (describing procedures relating to the enactment of a claims bill).

12

*But compare Gerard*, 472 So. 2d at 1173 (Alderman, J.) (suggesting that if a court rendered judgment for less than the sovereign immunity limits, "Gerard would not be able to seek a claims bill"), *with id.* at 1173 (Shaw, J., concurring) ("[I]t is incorrect to state that petitioner will not be able to seek a claims bill in the legislature if his suit is fruitless. A citizen seeking such relief merely contacts his or her legislative representative(s) and asks for assistance."). It is more difficult to say whether it will pose a practical problem, but Bradshaw should be able to make it clear to the legislators that the jury found that the School Board owes her a $200,000 "moral obligation" on top of what she obtained by legal process, and that is probably all that matters about the judgment for this purpose. *See Dickinson v. Bradley*, 298 So. 2d 352, 354 (Fla. 1974).

Even if a smaller judgment were likely to present a problem, the parties proceeded in the district court and before this court on the assumption that Fla. Stat. § 768.28(5) limited the size of the judgment; no one argued that the critical question was the degree to which the judgment was enforceable or tried to integrate that limit with federal procedural law. We therefore VACATE the judgment of the district court and REMAND the case for the entry of judgment in the amount of $300,000, and for further proceedings not inconsistent with this opinion.