**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-12573

————————————————

MALAK KHATABI,
 and other similarly situated individuals,

*Plaintiff-Appellant,*

*versus*

CAR AUTO HOLDINGS LLC,
 d.b.a. Palmetto Alfa Romeo Fiat,
CARLOS A. RIOS,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-20458-EGT

————————————————

Before JILL PRYOR, LUCK, and HULL, Circuit Judges.

LUCK, Circuit Judge:

Malak Khatabi sued Car Auto Holdings LLC—a car dealership—and its manager, Carlos Rios, for sex discrimination under Title VII of the federal Civil Rights Act and the Florida Civil Rights Act. A jury awarded her $81,028 in compensatory damages and $750,000 in punitive damages. After trial, the dealership moved to reduce Khatabi's damages. The district court agreed with the dealership that Khatabi's total damages under Title VII were capped at $50,000, so it awarded Khatabi damages under the Act instead. Because the Act doesn't limit compensatory damages but does limit punitive damages to $100,000, the district court awarded her $181,028. Khatabi appealed.

We reverse and remand with instructions. We agree with the district court that the jury's damages award exceeded the statutory maximum amounts allowed by Title VII and the Act. Where that's the case, a plaintiff's damages must be reduced to the statutory maximum award supported by the jury's verdict. What is that here? Because the jury found that the dealership violated Title VII and the Act, but didn't allocate the damages between the federal and state sex-discrimination statutes, Khatabi's award could be no more than the sum of the maximum damages available under each of those statutes. *See Bradshaw v. Sch. Bd. of Broward Cnty.*, 486 F.3d 1205, 1209 (11th Cir. 2007). Based on the jury verdict, that was $481,028.

Title VII's $50,000 cap on damages for defendants with fewer than 101 employees could have further reduced Khatabi's

damages award. But the cap is an affirmative defense, which the dealership waived because it failed to plead or otherwise preserve the defense.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Car Auto Holdings does business as a Fiat dealership in Miami. Khatabi worked at the dealership under Rios's supervision for about four months. During those four months, Rios and some of his colleagues harassed Khatabi near-constantly—calling her "hot for an 18-year-old," "forcing" her to accompany male customers on test drives and "use her looks" to persuade them to buy cars, and "sp[eaking] to her in degrading tone[s], both in the presence of and apart from customers." One time, a manager proposed that Khatabi hand out business cards in a bikini. The harassment escalated from verbal to physical as the weeks passed. Rios and other managers "massaged" Khatabi's shoulders, "grabbed" and "kissed" her in the parking lot after work, and touched her backside. "[U]nable to withstand the [] harassment," Khatabi quit and sued the dealership for sex discrimination under Title VII and the Florida Civil Rights Act.

The dealership and Rios pleaded one affirmative defense in response to Khatabi's sex-discrimination claims. They alleged that Khatabi had "unreasonably failed to take advantage of [] preventive or corrective opportunities . . . to avoid harm" from the harassment she'd experienced. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 806–07 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

### A. *The Pretrial Stipulation and Proposed Jury Instructions*

Two months before trial, the parties submitted a joint pretrial stipulation as required by the district court's scheduling order and Southern District of Florida Local Rule 16.1. That rule required the stipulation to "state[] in reasonable detail [the] issues of fact which remain to be litigated at trial." S.D. Fla. L.R. 16.1(e)(6). The parties' joint stipulation said that they would litigate twelve fact issues. Nine issues went to the elements of Khatabi's claims, including whether she'd been discriminated against based on her sex and the damages from that discrimination. Three more concerned whether she was entitled to attorneys' fees and punitive damages. None related to an affirmative defense.

Also as required by the district court's scheduling order, the parties jointly submitted proposed jury instructions. The instructions, which spanned 116 pages, tracked the twelve issues in the stipulation.

### B. *The Trial*

Trial lasted three days. As relevant here, Rios testified that the dealership had "around 20, 22" employees.

At the end of the third day, the jury found for Khatabi on her sex-discrimination claims. The jury awarded $80,000 for "emotional pain and mental anguish," $1,028 for lost employment benefits, and $750,000 in punitive damages. The district court entered an initial judgment against the dealership and Rios on Khatabi's sex-discrimination claims for $831,028.

C. *The Post-Trial Proceedings*

After the verdict, the dealership and Rios filed two post-judgment motions. In the first, they sought judgment as a matter of law, a new trial, and a reduction of the damages award. Khatabi, they argued, was "limited to [a] recovery under a single statutory path." Title VII capped her damages at $50,000 for employers—like the dealership—with fewer than 101 employees, 42 U.S.C. § 1981a(b)(3)(A), while the Act capped only punitive damages at $100,000, Fla. Stat. § 760.11(5). So, "at most," Khatabi could recover $181,028: her full mental-anguish and lost-benefit damages plus $100,000 in punitive damages under the Act.

In the second post-judgment motion, Rios sought to amend the judgment. He contended that there shouldn't have been a judgment against him on Khatabi's sex-discrimination claims because they were against only the dealership, and because Title VII doesn't allow for individual liability.

Sensing an opportunity to resolve the case without more litigation, the district court, on its own initiative and before Khatabi responded to the motions, referred the parties to a magistrate judge for mediation. The mediation would be held within four weeks. In the meantime, the court ordered, the motions would be administratively terminated. "Depending on the outcome of the mediation," the court "[would] direct the [c]lerk . . . to reinstate the [m]otion[s]." The parties agreed that the magistrate judge could

conduct all post-judgment proceedings and, as ordered, they attended the mediation.[1]

The mediation ultimately didn't produce an agreement, so the dealership and Rios moved to reinstate their post-judgment motions. The district court took up the second post-judgment motion—the motion to amend the judgment. Noting that "binding law" precluded Rios's individual liability, the district court agreed that the initial judgment was wrong and vacated it. In its place, the district court wrote, it would enter an amended judgment eliminating Rios's liability for Khatabi's sex-discrimination claims.

That left unaddressed the first post-judgment motion. The district court clarified that it didn't wish to address the arguments in the first post-judgment motion before Khatabi had an opportunity to respond. So, it directed the dealership to file another motion raising those arguments after entry of the amended judgment.

That's what the dealership did. As it had before, the dealership argued that Khatabi should have been allowed to recover $50,000 under Title VII or $181,028 under the Act, but not both.

The district court partly granted the first post-judgment motion, reducing Khatabi's sex-discrimination damages to $181,028. *Khatabi v. Car Auto Holdings, LLC*, 2024 WL 3326888, at *13 (S.D. Fla. July 8, 2024). The court agreed that Khatabi couldn't recover

---

[1] With the parties' consent, the district court referred all post-judgment proceedings to the magistrate judge. *See* 28 U.S.C. § 636(c)(1). From this point on, then, we'll refer to the magistrate judge as the district court.

more than $50,000 in total damages under Title VII because the dealership had fewer than 101 employees. *Id.* But since Khatabi had "prevailed under both Title VII and the [Act]," it explained, she was entitled to recover "the larger of the two caps" available under those statutes. *Id.* (first citing *Bradshaw*, 486 F.3d at 1209; and then quoting *Williams v. Sims Bros.*, 889 F. Supp. 2d 1007, 1009 (N.D. Ohio 2012)). And with Khatabi's Title VII damages limited to $50,000, the Act supplied the larger cap. *Id.* As the defendants had explained, because the Act didn't cap compensatory damages, Khatabi was entitled to her awards of $80,000 for mental anguish and $1,028 for lost benefits. *Id.* But because the Act did cap punitive damages at $100,000, Khatabi was allowed only that much of her punitive-damages award—not the full $750,000. *Id.* The district court then entered a second amended judgment consistent with its ruling.

## II.  STANDARD OF REVIEW

"We review de novo our appellate jurisdiction." *Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195, 1200 (11th Cir. 2020). "Whether to alter or amend a judgment pursuant to [Federal Rule of Civil Procedure] 59(e) is committed to the sound discretion of the district judge." *Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000) (citation modified). And we "typically review[] a district court's ruling upon a [r]ule 60(b) motion for abuse of discretion." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001).

### III.  DISCUSSION

Khatabi raises two issues on appeal.  First, she argues that the initial judgment became final when it went unappealed within the thirty-day window for doing so, and there is no jurisdiction to review it now.  Alternatively, she contends that the district court wrongly applied Title VII's $50,000 cap to the damages award for her sex-discrimination claims and erroneously awarded her damages under only the Florida Civil Rights Act instead of both Title VII and the Act.

### A.  *Appellate Jurisdiction*

We start, as we must, with our jurisdiction.  *See Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1194 (11th Cir. 2009) ("Jurisdiction is a threshold issue.").  Khatabi argues that the district court "dispos[ed] of" the defendants' post-judgment motions when it administratively terminated them pending mediation.  *See* Fed. R. App. P. 4(a)(4)(A).  At that point, she asserts, the initial judgment became final and the parties had thirty days to appeal from it.  Because there was no appeal within that thirty-day window, Khatabi says, the jurisdictional window to review the final initial judgment has closed.  *See Green v. DEA*, 606 F.3d 1296, 1300 (11th Cir. 2010) ("[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement.").

For two reasons, we disagree.

### 1.  "Disposed Of"

First, the administrative termination didn't "dispose of" the defendants' post-judgment motions under rule 4(a)(4)(A).  "In a

civil case . . . the notice of appeal . . . must be filed with the district clerk within [thirty] days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). When a party files an authorized post-judgment motion, "the time to file an appeal" is tolled; it "runs for all parties from the entry of the order disposing of the last such remaining motion." *Id.* R. 4(a)(4)(A).

"We construe rules of procedure like any other statutory scheme"; "we begin . . . by looking at the language of the rule, and, absent a definition of a term contained in the rule, we look to the common usage of words for their meaning." *Ruiz v. Wing*, 991 F.3d 1130, 1138 (11th Cir. 2021). "'Dictionary definitions speak to common usage,' and the plain meaning of a word must be viewed in the context of the entire text." *Id.* (quoting *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1146 (11th Cir. 2018)).

"The term 'dispose [of]' in [rule 4] means 'to settle a matter finally or definitively [or] . . . to treat or handle (something) with the result of finishing or finishing with.'" *Ruiz*, 991 F.3d at 1139 (first citing *Dispose, Webster's Third New Int'l Dictionary* (2002); and then citing *Dispose, The American Heritage Dictionary of the English Language* (3d ed. 1996)); *see also, e.g., Disposition, Black's Law Dictionary* 572 (10th ed. 2014) (defining a "disposition" as "a final settlement or determination"). While "[t]o 'dispose of' a motion, a court must act in a way that 'indicates an intention that the act be final,'" *Lexon Ins. Co. v. Naser*, 781 F.3d 335, 338 (6th Cir. 2015) (quoting *Campbell Indus., Inc. v. Offshore Logistics Int'l, Inc.*, 816 F.2d 1401,

1404 (9th Cir. 1987)), there's no intent for an act to be final when the district court "le[aves] a portion of the motion unaddressed," *Gelin v. Balt. Cnty.*, 122 F.4th 531, 538 (4th Cir. 2024).

That's what happened here. The district court's administrative termination didn't "dispose of" the defendants' post-judgment motions because the court didn't intend for the termination to be final. *See Naser*, 781 F.3d at 338. On the contrary, the district court was clear that its termination of the post-judgment motions "[d]epend[ed] on the outcome of the mediation conference." If the mediation failed, it would direct the clerk of court to reinstate the post-judgment motions. It then set a time in which the mediation would take place. When the mediation failed, the district court reached the merits of both motions. Nothing about the way in which the court administratively terminated the post-judgment motions suggested that it was "settl[ing]" them "finally or definitively." *See Ruiz*, 991 F.3d at 1139. The administrative termination left the motions "unaddressed," *Gelin*, 122 F.4th at 538, so they could be addressed later if the mediation was unsuccessful.

Because the administrative termination didn't "dispose of" the post-judgment motions, it didn't start the thirty-day period to appeal the initial judgment, as Khatabi contends.

### 2. Rule 60

Second, even if Khatabi were right that the administrative termination "disposed of" the post-judgment motions, the district court was allowed to correct legal mistakes in the judgment after the close of the thirty-day appeal period. *See* Fed. R. Civ. P. 60(b).

"[T]he court may relieve a party . . . from a final judgment [for] . . . mistake . . . ," *id.* R. 60(b)(1), including its own mistake of law, *Kemp v. United States*, 596 U.S. 528, 535 (2022) ("'[M]istake' in [r]ule 60(b)(1) includes legal errors made by judges."), "within a reasonable time—and . . . no more than a year after the entry of the judgment," Fed. R. Civ. P. 60(c)(1). It needn't wait for a motion from the parties to correct the legal mistake. *See McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (holding that the district court didn't err "in vacating on [its] own motion [an] earlier judgment" under rule 60(b)).

Because relief under Title VII and the Act "is available against only the employer and not against individual employees," *see Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006); *Patterson v. Consumer Debt Mgmt. & Educ., Inc.*, 975 So. 2d 1290, 1292 (Fla. Dist. Ct. App. 2008) (same under the Act), the initial judgment made the legal mistake of imposing individual liability against Rios for the sex-discrimination claims, *see* Fed. R. Civ. P. 60(b)(1). The district court corrected that legal mistake by vacating the initial judgment and entering an amended judgment. Because it fixed a legal mistake in the initial judgment, the amended judgment functioned as a new final judgment, starting a new thirty-day appeal period and opening the time to file additional post-judgment motions. *See* Fed. R. App. P. 4(a)(1)(A); *see also Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999) (considering a timely appeal from an amended judgment entered under Rule 60(b)); *cf. FTC v. Minneapolis-Honeywell Regul. Co.*, 344 U.S. 206, 212 (1952) (holding that an amended judgment that "changes

matters of substance . . . in a judgment previously rendered . . . [causes] the period within which an appeal must be taken . . . [to] begin to run anew").

## B. *The Damages Reduction*

Jurisdiction notwithstanding, Khatabi argues that the district court wrongly applied Title VII's $50,000 employee-headcount cap to her sex-discrimination damages and then erroneously awarded her damages only under the Florida Civil Rights Act. We review her argument in two steps. First, we consider the statutory maximum damages Khatabi was entitled to under Title VII and the Florida Civil Rights Act based on the jury's verdict, and explain how to allocate those damages between the federal and state statutes where, as here, "[t]he jury was not instructed to apportion its award of damages between [Khatabi's] federal law and state law claims." *Bradshaw*, 486 F.3d at 1207. Second, we review whether Title VII's $50,000 employee-headcount cap should have further reduced her award.

## 1.  The Statutory Maximums

The statutes under which Khatabi sought relief—Title VII and the Act—limit the damages she can recover on her sex-discrimination claims. Under Title VII, "[t]he sum of the amount of compensatory damages awarded . . . for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party . . . $300,000." 42 U.S.C. § 1981a(b)(3).

Similarly, the Act provides that "[a] judgment for the total amount of punitive damages awarded . . . shall not exceed $100,000." Fla. Stat. § 760.11(5).

No federal court may award damages under Title VII or the Act above the maximums set by those statutes. Each maximum reflects a legislative choice: a defendant may be liable for discrimination, but the damages "shall not exceed" the statutory limits, irrespective of the facts of the case or the parties' arguments. 42 U.S.C. § 1981a(b)(3); Fla. Stat. § 760.11(5). "Shall not" "creates an obligation impervious to judicial discretion." *See In re Tennyson*, 611 F.3d 873, 877 (11th Cir. 2010) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). When a court "determin[es] that the law does not permit [an] award," it "has a mandatory duty to . . . conform[] [the award] to the requirements" of the law. *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999). If a "portion of a verdict is for an identifiable amount that is not permitted by law," the court must simply "enter judgment for the correct amount." *Id.* at 1330.

That said, the maximums set by Title VII and the Act apply only to damages awarded "under th[ose] section[s]." 42 U.S.C. § 1981a(b)(3); Fla. Stat. § 760.11(5). "[T]he Supremacy Clause ensures that [the Act] can do nothing to limit the size . . . of a federal award [under Title VII]." *Bradshaw*, 486 F.3d at 1209. And "Congress expressly disclaimed any [] intention" for "[t]he federal cap . . . [to] limit damages under parallel state laws." *Id.* at 1208.

So, absent some additional statutory limitation, the Title VII maximum doesn't limit the damages available under the Act, and the Act doesn't limit the damages available under Title VII. *See id.*

For that reason, when a plaintiff sues under both statutes, and the jury doesn't allocate the award between the two statutes, her maximum award "is limited only by the combined effect of [the] state and federal law limits on damages." *Id.* (citation modified). In that circumstance, "if Title VII cannot remedy the full extent of [a plaintiff's] injury because of its damage cap, then the remaining portion of her injury should be remedied as much as possible under the [Act], and vice versa." *Id.* at 1207–08 (citing *Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 65–66 (1st Cir. 2005)); *accord Hall v. Consol. Freightways Corp. of Del.*, 337 F.3d 669, 678–80 (6th Cir. 2003) (holding that damages awarded above the Title VII maximum could be "reallocated" to an analogous, uncapped state statute (quoting *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1349–50 (D.C. Cir. 1999))); *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 570–71 (3d Cir. 2002) (same); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 509–10 (9th Cir. 2000) (same); *Martini*, 178 F.3d at 1349–50 (same); *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 576 (8th Cir. 1997) (same). For example, where a jury awards $500,000 in compensatory damages under Title VII and the Act against a large defendant in an unallocated verdict, the plaintiff will "normally" receive a judgment for

24-12573                Opinion of the Court                15

that full amount—$300,000 under Title VII and the "remaining $200,000 . . . under the [Act]." *Bradshaw*, 486 F.3d at 1208.[2]

Applied here, Khatabi is entitled to a maximum award of $481,028 for her sex-discrimination claims against the dealership— the combined maximum available through both Title VII and the Act after the jury's verdict. *Id.* at 1208–09. Again, the jury awarded Khatabi a total of $831,028 in sex-discrimination damages—$80,000 in compensatory damages for "mental anguish," $1,028 in compensatory damages for lost employment benefits, and $750,000 in punitive damages. It didn't "apportion [the] award of damages between" Title VII and the Act, so we proceed "normally" under *Bradshaw*. *Id.* at 1207–08. Khatabi doesn't need to use any part of her Title VII apportionment to recover her compensatory damages. Instead, she can recover all $81,028 under the Florida Civil Rights Act, which doesn't cap compensatory awards. *Id.* at 1208 ("[The Act], unlike Title VII, contains no general damages cap."); *see also* Fla. Stat. § 760.11(5) (not limiting compensatory damages). But the Act and Title VII limit her punitive damages to $400,000— $100,000 from the Act and the $300,000 upper limit from Title VII. Any award of sex-discrimination damages exceeding $481,028 would therefore be unlawful. *See Johansen*, 170 F.3d at 1331.

---

[2] Of course, if the jury had apportioned damages between statutes, that apportionment would control so long as the award "conform[ed] . . . to the requirements" of the law. *Johansen*, 170 F.3d at 1331.

### 2.  The Employee Damages Cap

The dealership argues that Khatabi's punitive damages award must be reduced even further to account for Title VII's $50,000 damages cap for employers with fewer than 101 employees.  But unlike the $300,000 maximum—which is the upper limit a plaintiff may recover under Title VII—the employee-headcount damages cap is a waivable affirmative defense.  Because the dealership didn't plead the $50,000 cap in its answer—or list its employee headcount in the pretrial stipulation as a fact issue to be decided by the jury, or propose jury instructions on its employee headcount— it waived the benefit of the cap.

Title VII limits the "sum of the amount of compensatory damages . . . and the amount of punitive damages" available to each plaintiff.  42 U.S.C. § 1981a(b)(3).  The limit varies based on a specific fact: the number of the defendant's employees.  It's $50,000 for defendants who have between fifteen and one hundred employees; $100,000 when there are between 101 and 200 employees; $200,000 when there are between 201 and 500 employees; and $300,000 when there are more than 500 employees.  *Id.* §§ 1981a(b)(3)(A)–(D).  As we explained, the $300,000 cap is the statutory maximum; there are no factual circumstances in which a plaintiff could recover more than that amount.

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]"  Fed. R. Civ. P. 8(c)(1). "An affirmative defense [is] '[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by the

applicable substantive law.'" *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (quoting 2A *Moore's Federal Practice* ¶ 8.27[3] (2d ed. 1985)). "In determining whether a particular argument is an affirmative defense, courts consider 'the logical relationship between the defense and the cause of action,' and the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings." *Id.* (quoting *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987)). "Generally speaking, . . . [an] 'avoidance or affirmative defense' encompasses . . . allegations outside of the plaintiff's prima facie case that the defendant . . . cannot raise by a simple denial in the answer." 5 *Wright & Miller's Federal Practice & Procedure* § 1271 (4th ed. Apr. 2026 update).

Title VII's employee-headcount cap fits that description. The number of employees a defendant has isn't an element of a Title VII claim, so it isn't raised by a "simple denial." *See, e.g., Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 175–76 (1st Cir. 2011) ("The applicability of the caps is not an element of the Title VII claim."). And a sex-discrimination plaintiff would be unfairly surprised to learn after the close of discovery—or, as here, after a jury trial—that, all along, the number of employees working for the defendant was a fact issue in the case. *See Hassan*, 842 F.2d at 263. Without advance notice, the plaintiff would never know that she needed to take discovery on the employee headcount or rebut the defendant's factual position at trial. "[D]ue process concerns and the traditional burden of proof dictate that the defendant employer bear the burdens of production and persuasion on the cap[]." *Hernandez-Miranda*, 651 F.3d at 176.

For that reason, "a statutory bar to recovery," or "something in the nature of a limitation," is ordinarily an affirmative defense. 5 *Wright & Miller's Federal Practice & Procedure* § 1271; *see also Ingraham*, 808 F.2d at 1079 (concluding that a statutory limit on medical-malpractice damages was an affirmative defense). As our sister circuits have held, "a statutory provision limiting damages to a fixed sum constitute[s] an affirmative defense for purposes of [rule] 8(c)." *Carrasquillo-Serrano v. Mun. of Canovanas*, 991 F.3d 32, 42–43 (1st Cir. 2021) (citation modified); *see also Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1163 (10th Cir. 2017) (holding that a statutory cap on noneconomic compensatory damages was an affirmative defense governed by rule 8(c) and observing that "[t]he majority of federal circuits to address the question have held that a damages cap must be pled as an affirmative defense in federal court"); *Simon v. United States*, 891 F.2d 1154, 1157 (5th Cir. 1990) (holding that a statute limiting recoverable damages in medical malpractice cases was a rule 8(c) avoidance).[3] *But see Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987) (holding that a statutory cap on certain noneconomic damages "is a limitation of damages rather than an affirmative defense," but conceding that where "application of [a limitation] . . . require[s] resolution of factual issues[,] . . . plaintiffs may be prejudiced if defendants do not

---

[3] *Cf. Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003) (noting that "[a] cap on damages is only a partial defense, but that is true of any defense that is limited to the amount of damages, and in that respect it is no different from comparative negligence, which clearly is an affirmative defense").

raise [the limitation] prior to judgment"). We reach the same conclusion here.

Because the employee-headcount cap was an affirmative defense, the dealership had to plead the defense in its answer. Fed. R. Civ. P. 8(c)(1). Because it didn't, the defense was waived. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense.").

The dealership's waiver was reinforced by the pretrial stipulation and the proposed jury instructions. "[P]arties are bound by their stipulations," and "[the] pretrial stipulation frames the issues for trial." *G.I.C. Corp. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997). By "failing to identify" the number of its employees as a fact issue in the stipulation, the dealership "waive[d] the right to have [that] issue decided." *See Morro v. City of Birmingham*, 117 F.3d 508, 516 n.3 (11th Cir. 1997). And where, as here, a party fails to timely object to "an instruction or the failure to give an instruction," Fed. R. Civ. P. 51(c)(1), it waives not only its right to have a trial on that issue, but also "its right to raise the issue on appeal," *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999).

Yes, Rios testified that the dealership employed around twenty people. But the jurors never had the opportunity to determine that they believed him. (Indeed, as the verdict shows, the jury generally didn't believe Rios, who denied ever participating in or witnessing sexual harassment directed towards Khatabi.) And

because the dealership didn't put Khatabi on notice that the number of employees was a fact issue at trial, she didn't know—and couldn't have known—to contest Rios's testimony. *See Hassan*, 842 F.2d at 263 (holding that a waived affirmative defense may be raised at trial only if the plaintiff is "prepared to properly litigate it"). Although the dealership suggests that Title VII prohibited it from "inform[ing] the jury of the limitations described in subsection (b)(3)," *see* 42 U.S.C. § 1981a(c)(2), the jury could have determined the dealership's employee headcount without ever learning of the caps.

Because the dealership waived the benefit of Title VII's $50,000 damages cap, it was error for the district court to apply that cap to reduce Khatabi's sex-discrimination damages to $181,028. She was entitled to $481,028—the maximum allowed by the jury's unallocated verdict under Title VII and the Act.

## IV. CONCLUSION

We reverse the second amended judgment and remand for the district court to enter judgment for Khatabi in the amount of $481,028 as to her sex-discrimination claims—$81,028 in compensatory damages and $400,000 in punitive damages. In all other respects, the second amended judgment should remain unchanged.

**REVERSED     AND     REMANDED     WITH INSTRUCTIONS.**